IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Civil Action No.  05-cv-00687-WYD-BNB

GREGORY A. DAVISCOURT;
PATRICIA L. DAVISCOURT, wife of Gregory Daviscourt;
NICHOLAS DAVISCOURT, a minor, son of Gregory and Patricia Daviscourt, by and through his father and Guardian Ad Litem Gregory Daviscourt;
JOSHUA DAVISCOURT, a minor, son of Gregory and Patricia Daviscourt, by and through his father and Guardian Ad Litem Gregory Daviscourt;
JACOB DAVISCOURT, a minor, son of Gregory and Patricia Daviscourt, by and through his father and Guardian Ad Litem Gregory Daviscourt;
KARL DAVISCOURT, father of Gregory Daviscourt; and
BARBARA DAVISCOURT, mother of Gregory Daviscourt,

    Plaintiffs,

v.

COLUMBIA STATE BANK, a Washington corporation;
ELIZABETH ANDERSON, in her capacity as Vice President of the Bank and as an individual;
JOHN DOE ANDERSON, husband of Elizabeth Anderson, and the marital community composed thereof;
JONATHAN RAUCHWAY, in his capacity as attorney for the Bank and as an individual;
ARAPAHOE COUNTY;
KELLY M. DRAPER, in his capacity as a police officer for Arapahoe County, and as an individual;
JOHN DOES 1-5, in their capacity as police officers for Arapahoe County, and as individuals;
DOUGLAS COUNTY;
DON LIGHTFOOT, in his capacity as a police officer for Douglas County and as an individual;
RANDALL HENNESSEY, in his capacity as a police officer for Douglas County and as an individual; and
JOHN DOES 6-8, in their capacity as police officers for Douglas County and as individuals,

    Defendants.

**ORDER**

Before the Court are the following motions: Defendant Jonathan Rauchway's Motion for Sanctions Against Counsel for Plaintiffs [# 116], filed November 29, 2005; Defendant Jonathan Rauchway's Motion to Dismiss Second Amended Complaint [# 160], filed February 16, 2006; Douglas County Defendants' Motion to Dismiss Second Amended Complaint [# 169], filed February 27, 2006; Defendants Columbia State Bank's and Elizabeth Anderson's Renewed Motion to Dismiss and Request for Attorney's Fees [# 180], filed March 3, 2006; Arapahoe Defendants' Motion to Dismiss and Motion for Summary Judgment [# 210], filed April 19, 2006. I have reviewed these motions as well as their responses and replies. I also heard argument on the motions at a hearing on September 18, 2006.

**I.   Background**

Plaintiffs' 53-page Second Amended Complaint for Damages asserts claims under 42 U.S.C. § 1983 and various Colorado state law causes of action. The following summarizes the allegations of the Complaint which are key to my decision.

This case arises out of a dispute between Greg and Patty Daviscourt and Columbia State Bank. In 1997, Greg Daviscourt formed the Northwest Construction and Restoration Company, which financed its operations with a credit line provided by Columbia State Bank. Second Am. Compl. at ¶¶ 44-45. In July of 2002, the Bank conducted an audit and disagreed with the manner in which Northwest Construction

was recording or reporting its accounts receivable. *Id.* at ¶ 48. The account was transferred to Defendant Elizabeth Anderson, a bank vice president. *Id.* at ¶ 49. The bank declined to make further advances to Northwest Construction. *Id.* The complaint alleges that Defendant Anderson told Greg and Patty Daviscourt that she would "would destroy them personally and financially. She threatened them with prison if the Bank was not paid." *Id.* at ¶ 50. Northwest Construction closed as a result of the termination of its credit line. *Id.* at ¶ 51. The Bank sued Northwest Construction and Greg and Patty Daviscourt individually in King County Superior Court in Seattle, Washington, and obtained a judgment on a contract claim. *Id.* at ¶ 54.

After Northwest Construction closed, Greg Daviscourt accepted employment in Denver, and the Daviscourt family moved to Colorado in May 2003. *Id.* at ¶ 55. In June 2003, Columbia State Bank registered the King County judgment with the Arapahoe County District Court under the Uniform Enforcement of Foreign Judgments Act. *Id.* at ¶ 57. In the summer and fall of 2003, discovery in the underlying King County case continued. *Id.* at ¶ 60. On December 11, 2003, Greg and Patty Daviscourt were served with subpoenas pursuant to Colorado Rule of Civil Procedure 69 to appear and testify at the Arapahoe County District Court on Thursday, December 18, 2003. The subpoenas were issued by Defendant Rauchway. *Id.* at ¶ 65. The Daviscourts alerted Mr. Gossler, their attorney from Washington, of the subpoenas. *Id.* at ¶ 67. On December 16, 2003, Mr. Gossler spoke with Defendant Rauchway and told him that he was in the process of retaining Colorado counsel to represent the Daviscourts and that the Daviscourts wanted additional time so that they could be

represented by counsel. *Id.* at ¶¶ 68-69. Mr. Gossler asked Defendant Rauchway for a continuance, but Defendant Rauchway refused. *Id.* at ¶ 70. Denver attorney Anthony Leffert was retained to represent the Daviscourts, and he filed a motion to quash the subpoenas and for a protective order on December 17, 2003. *Id.* at ¶¶ 71-73. Mr. Leffert, Mr. Gossler, and the Daviscourts believed that the Daviscourts were not required to appear at the Rule 69 examination on December 18, 2003, due to the motion to quash and for a protective order. *Id.* at ¶¶ 74-76.

Defendants Rauchway and Anderson appeared at the December 18th hearing, but neither the Daviscourts nor their counsel appeared. *Id.* at ¶ 77. Defendant Rauchway told the court he had received a call from attorneys that purported to represent the Daviscourts and then told the court that the attorneys reported they were planning to appear on December 18th. *Id.* at ¶¶ 78-79. On behalf of the Bank, Defendant Rauchway allegedly asked the court for arrest warrants for Greg and Patty Daviscourt. *Id.* at ¶ 83. The court then issued arrest warrants and set bond in the amount of $50,000 for each. *Id.* at ¶ 85. Later the same day, the court entered a minute order staying the enforcement of the warrants pending consideration of the motion to quash and for a protective order. *Id.* at ¶ 90. Also on December 18th, Defendant Rauchway filed a response in opposition to Plaintiffs' motion and stated that the Daviscourts had "fled" the State of Washington. *Id.* at ¶ 91. The Court then entered an order denying the motion to quash and issued a minute order activating the civil arrest warrants. *Id.* at ¶ 92.

Defendant Anderson contacted the Sheriff's office to ask the police to serve the

arrest warrants on Greg and Patty Daviscourt. *Id.* at ¶ 112. On December 31, 2003, Douglas County Defendants allegedly followed Patty Daviscourt and her sons to the Linens & Things store on Park Meadows Center Drive. *Id.* at ¶¶ 119-120. After Patty Daviscourt left the store, Defendants Lightfoot and Hennessey approached her, in the presence of her sons, and told her they were going to arrest her and take her to jail. *Id.* at ¶ 121. Defendant Lightfoot then told Patty Daviscourt to call her husband to have him pick up their sons. He also allegedly threatened to call social services to have the children taken from her if she did not make the call. *Id.* at ¶ 123. Two more Douglas County police cars then arrived at the scene. *Id.* at ¶ 125. Defendants Hathaway, Ostrowski and John Doe 3 were present during Patty Daviscourt's arrest. *Id.* at ¶ 126. When Patty Daviscourt reached her husband by phone, he told her he would send his secretary to pick up their sons and would contact their attorney. *Id.* at ¶ 127. When Patty Daviscourt told Defendant Lightfoot that Greg Daviscourt was not coming to pick up the boys, Defendant Lightfoot called Greg Daviscourt and told him that his wife was being arrested and taken to jail and that if Greg Daviscourt did not personally pick up his sons, they would be taken away by social services. *Id.* at ¶ 129. Greg Daviscourt's secretary then arrived to pick up the boys, and Patty Daviscourt was arrested, put in handcuffs, and transported to the Douglas County jail. *Id.* at ¶¶ 130-33. At the jail, Patty Daviscourt was interrogated by Defendants about her husband. *Id.* at ¶ 133. Bail in the amount of $50,000 was posted by Karl and Barbara Daviscourt, who secured the services of a bailbondsman in Seattle and chartered a private jet to fly to Denver. Patty Daviscourt was released around midnight on December 31, 2003. *Id.* at ¶¶ 134-35.

After talking to his wife, Greg Daviscourt attempted to contact his Colorado counsel, Mr. Leffert, whose office was closed for the day and who was unavailable by cell phone. He did get in touch with his Seattle counsel, Mr. Gossler, and his father, Karl Daviscourt. *Id.* at ¶ 139. While talking on the phone to his father, Greg Daviscourt heard someone knocking at his office door. He walked out of his office, into the lobby, and to the outside entrance of his office, where he saw six police officers, who were individual Arapahoe and Douglas County Defendants. *Id.* at ¶ 140. Plaintiffs allege that Defendants stood about eight feet from Greg Daviscourt with weapons pointed at his chest and head. Two of the weapons were handguns and the others appeared to be automatic or semi-automatic rifles. *Id.* at ¶ 142. One Defendant pointed what appeared to be a .45 caliber semi-automatic handgun at Greg Daviscourt. Defendant's finger was allegedly inside the trigger guard, touching the trigger. *Id.* at ¶ 143. At the time the Bank's civil warrants were issued, Defendant Rauchway checked "no" on a form that asked whether the arrest of Greg or Patty Daviscourt would be a "high-risk arrest." *Id.* at ¶ 144. At the time of the arrest, Greg Daviscourt was not armed and did not resist or attempt to flee. *Id.* at ¶ 145. In the face of the Defendants' drawn weapons, Greg Daviscourt dropped to the ground, asking the Defendant with the .45 caliber semi-automatic handgun not to shoot him. That Defendant then dropped his entire weight on one knee directly into Greg Daviscourt's back as Daviscourt lay face down on the ground. *Id.* at ¶ 149. Three Defendants approached Daviscourt with their weapons still pointed at him, pulled him off the ground, and set him on his feet. *Id.* at ¶ 151. One of the Defendants asked Daviscourt if he had weapons in his office, and he

told him no.  *Id*. at ¶ 152.  Defendants Hathaway, Ostrowski, John Doe 1, and John Doe 2 were present during the arrest of Greg Daviscourt.  *Id*. at ¶ 153.  Daviscourt was placed in an Arapahoe County police car and taken to the Arapahoe County jail, where he spent 24 hours.  *Id*. at ¶ 154-156.  He was in jail for 23 hours before he was booked; even though bail was posted shortly after his arrest, the Arapahoe County jail would not release him until the booking process took place.  *Id*. at ¶ 154.

Plaintiffs allege that the Arapahoe and Douglas County Defendants who arrested Greg and Patty Daviscourt on the Bank's civil arrest warrant acted at the request of the Bank, by and through Defendant Anderson, as their agents.  *Id*. at ¶ 159-160.  They further allege that the Bank and Defendant Anderson were willful participants in a joint activity with the Douglas and Arapahoe County Defendants and that the Bank and Defendant Anderson acted in concert with the Arapahoe and Douglas County Defendants.  *Id*. at ¶ 161-162.  Plaintiffs also state, "As a proximate result of the acts and omissions of defendants, plaintiffs suffered personal injuries including, but not limited to, loss of liberty, fear, humiliation, emotional distress, out of pocket costs, and other consequential damages."  *Id*. at ¶ 163.

## II.  Standard of Review

In construing the motion to dismiss, the court "'must accept all the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff.'"  *David v. City and County of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996), *cert. denied*, 522 U.S. 858 (1997) (quoting *Gagan v. Norton*, 35 F.3d 1473, 1474 n. 1

(10th Cir. 1994)). "A complaint may be dismissed pursuant to FED. R. CIV. P. 12(b)(6) only 'if the plaintiff can prove no set of facts to support a claim for relief.'" *Id.* (quoting *Jojola v. Chavez*, 55 F.3d 488, 490 (10th Cir. 1995)). "A motion to dismiss under Rule 12(b) 'admits all well-pleaded facts in the complaint as distinguished from conclusory allegations.'" *Smith v. Plati*, 258 F.3d 1167, 1174 (10th Cir. 2001) (quoting *Mitchell v. King*, 537 F.2d 385, 386 (10th Cir. 1976)).

If, accepting all well-pleaded allegations as true and drawing all reasonable inferences in favor of plaintiff, it appears beyond doubt that no set of facts entitle plaintiff to relief, then the court should grant a motion to dismiss. *See Tri-Crown, Inc. v. Am. Fed. Sav. & Loan Ass'n*, 908 F.2d 578, 582 (10th Cir. 1990).

### III. Analysis

#### A. Absolute Immunity

The Douglas County and Arapahoe County Officer Defendants claim absolute immunity for executing a facially valid warrant. Plaintiffs, however, claim that because they have alleged that the warrant was facially invalid and that the officers knew or should have known this, the officers are not entitled to absolute immunity. Defendants have pointed out that the allegation that the warrant was facially invalid is a legal conclusion—not a well-pleaded fact that must be accepted as true for the purposes of this motion. I agree with Defendants on this issue, and I ultimately find that the bench warrant issued by the state court judge when Plaintiffs failed to appear at the hearing on December 18, 2003, was facially valid. Under Colorado Rule of Civil Procedure 69,

a judge has the authority to issue a bench warrant for a judgment debtor who has been served with a subpoena but fails to appear in court. COLO. R. CIV. P. 69(e)(2). This is exactly what happened in this case, and there was no reason to believe that at the time of the issuance of this warrant that Rule 69 was unconstitutional.

I also find persuasive Judge Nottingham's reasoning in *United States v. Gobey*, 1992 U.S. Dist. LEXIS 22060 (D. Colo. 1992). In *Gobey*, the court stated, "A bench warrant for failure to appear is supported by the judge's or magistrate's personal observation that a defendant has failed to appear." *Id.* at *16. The court went on to state

> A 'bench warrant' has been defined as 'process issued by the court itself, or 'from the bench,' for the attachment or arrest of a person; either in the case of contempt, . . . or to bring in a witness who does obey the *subpoena*.' Black's Law Dictionary at 142 (5th ed. 1979). Like the court's contempt power, it is a coercive and drastic form of process designed to compel obedience to a court which has acquired jurisdiction over defendant's person, in circumstances where a less coercive means – such as a summons, subpoena, or court order – has failed. In contrast, an arrest warrant has nothing to do with compelling obedience to court orders or vindicating the authority of the court.

*Id.* at *19-20.

Because I find that the bench warrant was facially valid, I also find that the officers are entitled to absolute immunity. The Tenth Circuit has stated, "Unless a warrant is facially invalid an officer has no constitutional duty to independently determine its validity." *Hill v. Bogans*, 735 F.2d 391, 393 (10th Cir. 1984). In *Martin v. Board of County Commissioners of the County of Pueblo*, the Tenth Circuit reaffirmed
-9-

an earlier holding that an official who executes a facially valid court order is entitled to absolute immunity from liability for damages in a suit challenging conduct prescribed by that order. *Martin v. Bd. of County Comm'rs of the County of Pueblo*, 909 F.2d 402, 405 (10th Cir. 1990)(citing *Valdez v. City and County of Denver*, 878 F.2d 1285, 1286 (10th Cir. 1989)). The Court in *Martin* further explained,

> In *Valdez,* we repeatedly emphasized our concern that law enforcement officers not become scapegoats for unconstitutional court orders simply by virtue of their status as the only available targets for challenging the authority of the immune judicial official actually responsible: 'Enforcing a court order or judgment is intrinsically associated with a judicial proceeding. If losing parties were free to challenge the will of the court by threatening its officers with harassing litigation, the officers might neglect the execution of their sworn duties. . . . To force officials . . . to answer in court every time a litigant believes the judge acted improperly is unacceptable. . . . [I]t is simply unfair to spare the judges who give orders while punishing the officers who obey them. Denying these officials absolute immunity for their acts would make them a "lightning rod for harassing litigation aimed at judicial orders." [Valdez,] 878 F.2d at 1288-90 (footnotes and citations omitted). The holding in *Valdez* was, accordingly, expressed specifically in terms of the direct relationship between the challenged conduct and the underlying directive of the court: "In this case, we hold that an official charged with the duty of executing a facially valid court order enjoys absolute immunity from liability for damages in a suit *challenging conduct prescribed by that order.*" *Id.* at 1286 (emphasis added).

*Id*. at 404-405.

Based on the law cited above, I find that the individual Arapahoe County and Douglas County officers are entitled to absolute immunity because the warrant they executed was facially valid.

### B.     Use of Unreasonable Force

Plaintiffs allege in their third cause of action that Greg Daviscourt was seized for

-10-

purposes of the Fourth Amendment and that he had a federally protected right not to be subjected to the use of unreasonable force against his person. This claim is brought against all Defendants.

While "an official charged with the duty of executing a facially valid court order enjoys absolute immunity from liability for damages in a suit challenging conduct proscribed by that order," (Martin, 909 F.2d at 405 (quoting *Valdez*, 878 F.2d at 1286)), "absolute immunity does not protect defendants from damage claims directed not to the conduct prescribed in the court order itself but to the manner of its execution." *Id.* (citing *Turney v. O'Toole*, 898 F.2d 1470, 1474 (10th Cir. 1990). Thus, while the officers may be entitled to absolute immunity for the execution of the facially valid warrant, their conduct while executing the warrant is still subject to scrutiny.

Determining whether force used to effect a particular seizure is "reasonable" under the Fourth Amendment "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). Further, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* This inquiry is an objective one, and "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" *Id.* at 397.

In accepting all the well-pleaded allegations of the complaint as true and construing them in the light most favorable to the plaintiff, I find that Plaintiffs have stated a claim for use of unreasonable force against Greg Daviscourt. I find Defendants' Motions to Dismiss should be denied to the extent they seek dismissal of this claim. To the extent the Arapahoe Defendants seek summary judgment on this issue on the basis that Defendants Draper and Zborowski are entitled to qualified immunity, I deny the motion without prejudice on the basis that discovery in this matter has been stayed and that discovery should be completed before the issue of qualified immunity is raised again with the Court.

### C. "Under Color of State Law"

"Title 42 U.S.C. § 1983 provides a remedy for deprivations of rights secured by the Constitution and laws of the United States when that deprivation takes place 'under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . .'" *Lugar v. Edmondson Oil Co., Inc.* 457 U.S. 922, 924 (1982) (quoting 42 U.S.C. § 1983). "A prerequisite to any relief under section 1983 is that the defendant has acted under color of state law." *Barnard v. Young*, 720 F.2d 1188, 1188-89 (10th Cir. 1983). Defendants Columbia State Bank, Elizabeth Anderson, and Jonathan Rauchway claim that they cannot be liable under § 1983 because they were not acting "under color of state law" as required for a § 1983 action.

The Supreme Court in *Lugar* established a two-part test for finding state action. "First, the deprivation must be caused by the exercise of some right or privilege created

by the state or by a rule of conduct imposed by the state or by a person for whom the state is responsible. . . . Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Id.* at 1189 (10th Cir. 1983) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)).  The court in *Barnard* noted "that it is helpful to examine the second prong of the test first." *Id.*  " A party may be a state actor because he is a state official, he acted together with or has obtained significant aid from state officials, or his conduct is otherwise chargeable to the state." *Id.* (citing *Lugar*, 457 U.S. at 936).

In *Barnard*, the Tenth Circuit stated, "Application of the *Lugar* test does not change the vast weight of authority that private attorneys, by virtue of being officers of the court, do not act under color of state law within the meaning of section 1983." *Id*. The court found that "Plaintiff's allegation that the attorney acted under color of state law when he employed the device of a subpoena duces tecum does not rise to the level of acting together with or obtaining significant aid from state officials.  Nor is the conduct otherwise chargeable to the state." *Id.*

The court has also stated, "Although *Lugar* adopts an expansive test for state action, the decision 'is carefully limited to prejudgment seizures of property.' 1 Martin A. Schwartz § John E. Kirklin, *Section 1983 Litigation: Claims, Defenses, and Fees,* § 5.14, at 291 (2d ed. 1998).  In other contexts, a private party's 'mere invocation of state legal procedures' does not constitute joint participation and thus is not state action.  *Id.* Accordingly, this circuit and several others have held that private parties to litigation and their lawyers are not state actors." *Read v. Klein*, 1 Fed. Appx. 866, 871 (10th Cir.

2001) (citing *Bernard v. Young*, 720 F.2d 1188, 1189 (10th Cir. 1983); *Lindley v. Amoco Prod. Co.*, 639 F.2d 671 (10th Cir. 1981); *Torres v. First State Bank of Sierra County*, 588 F.2d 1322, 1326-27 (10th Cir. 1978)).

Based on the cases cited above, I find that the Bank Defendants and their attorney Jonathan Rauchway are not state actors merely by having invoked the legal procedures of Colorado Rule of Civil Procedure 69. Thus, having concluded that there was no state action, I need not address the second prong of the *Lugar* test. I find that the § 1983 claims asserted against Defendants Columbia State Bank, Elizabeth Anderson, or Jonathan Rauchway must be dismissed.

### D.     Damage to the Husband/Wife and Parent/Child Relationship

Plaintiffs allege that they all had a federally protected right under the Fourteenth Amendment to the love, companionship and society of one another and that they were deprived of this right based on the actions of Defendants.

Initially, it is important to note that it is a "well-settled principle that a section 1983 claim must be based upon the violation of plaintiff's personal rights, and not the rights of someone else." *Archuleta v. McShan*, 897 F.2d 495, 497 (10th Cir. 1990) (citing *Dohaish v. Tooley*, 670 F.2d 934, 936 (10th Cir. 1982)). Further, in order for there to be a deprivation of an associational right so as to create a cause of action under § 1983, there must be "an allegation of intent to interfere with a particular relationship protected by the freedom of intimate association . . . ." *Trujillo v. Bd. of County Comm'rs of County of Santa Fe*, 768 F.2d 1186, 1190 (10th Cir. 1985).

In their Second Amended Complaint, Plaintiffs allege that the acts and omissions

of Defendants proximately caused the deprivation of Plaintiff's Fourteenth Amendment rights. There is no allegation in the Complaint of *intent* to cause such deprivation. Accordingly, I conclude that this claim must be dismissed.

### E.     Municipal Liability of Arapahoe and Douglas Counties

Plaintiffs state that Defendants Arapahoe and Douglas Counties, by and through their sheriffs, had in effect certain explicit and *de facto* policies, practices and customs which were applied to the planning and execution of the civil arrest warrant on Greg and Patty Daviscourt. Second Am. Compl. at ¶ 225, 256. Plaintiffs allege that it was the policy, custom and practice of the Defendant Counties to utilize unreasonable force. *Id.* at ¶ 228. The Complaint also alleges that the Defendant Counties failed to properly supervise and train their officers. *Id.* at ¶¶ 249-250.

"A municipality may not be held liable under § 1983 solely because its employees inflicted injury on the plaintiff. . . . Rather, to establish municipal liability, a plaintiff must show 1) the existence of a municipal policy or custom, and 2) that there is a direct causal link between the policy or custom and the injury alleged." *Hinton v. City of Elwood, Kansas*, 997 F.2d 774, 782 (10th Cir. 1993). Accepting all well-pleaded facts as true and construing them in the light most favorable to Plaintiffs, I find that the municipal liability claims should not be dismissed at this time.

### F.     Intentional Infliction of Emotional Distress

Plaintiffs allege that the Bank Defendants and Jonathan Rauchway intentionally caused the arrest of Greg and Patty Daviscourt. Second Am. Compl. at ¶ 280. Plaintiffs further allege that the acts and omissions of Defendants were undertaken for

-15-

the purpose of, or with reckless indifference towards, the infliction of severe emotional distress upon Plaintiffs and that the actions did cause severe emotional distress. *Id*. at ¶¶ 281-282. The elements of outrageous conduct are: (1) defendants engaged in extreme and outrageous conduct; (2) recklessly or with the intent of causing the plaintiff severe emotional distress; and (3) causing the plaintiff severe emotional distress. *Pearson v. Kancilia*, 70 P.3d 594, 597 (Colo. App. 2003)  The Bank Defendants claim that the conduct at issue does not rise to the level of outrageousness required by Colorado law. However, accepting all well-pleaded facts as true and construing them in the light most favorable to Plaintiffs, I find that this claim should not be dismissed at this time against Defendants Columbia State Bank, Elizabeth Anderson, and Jonathan Rauchway.

### G.   Conspiracy

Plaintiffs allege that Defendants conspired to deprive Plaintiffs of their constitutional rights. Second Am. Compl. at ¶ 285. The Tenth Circuit has stated, "[A]n allegation of conspiracy constitutes a viable claim under § 1983 . . . ." *Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir.1994). However, a plaintiff must allege specific facts showing an agreement and concerted action amongst the defendants. *Id.* "'Conclusory allegations of conspiracy are insufficient to state a valid §1983 claim.'" *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998)(quoting *Hunt v. Bennett*, 17 F.3d at 1266).

While the Court is dubious about the validity of this claim, it will remain for now against all Defendants, including Defendant Jonathan Rauchway. While Defendant

Rauchway, in his pleadings, argues that the Amended Complaint has no allegations that Mr. Rauchway had any agreements, understandings or anything to do with when and how the arrests were to be effectuated, I conclude that at this stage in the case, it would be premature to dismiss this claim against him.  I further find that the accuracy of Defendant Rauchway's statements needs to be subject to discovery in this case.

### H.     Abuse of Process

This claim is brought against the Bank Defendants and Defendant Rauchway, whom Plaintiffs allege intentionally caused the issuance of arrest warrants for Greg and Patty Daviscourt.  Second Am. Compl. at ¶ 289.  Plaintiffs also allege that "[t]he principal reason for the defendants' action was other than to obtain plaintiffs' testimony at a debtor exam."  *Id.* at ¶ 290.  "A prima facie case for abuse of process includes proof of (1) an ulterior purpose in the use of judicial proceedings; (2) willful actions by a defendant in the use of process that are not proper in the regular conduct of a proceeding; and (3) damages."  *Trask v. Nozisko*, 134 P.3d 544, 553-54 (Colo. App. 2006).  As with the other state law claims examined above, I find that it would be premature to dismiss this claim.  Accepting all well-pleaded facts as true and construing them in the light most favorable to Plaintiffs, I find that this claim should not be dismissed.

### I.     Sanctions

Defendant Jonathan Rauchway's Motion for Sanctions against Counsel for Plaintiffs will also be denied.  While the section 1983 claims against Jonathan Rauchway have been dismissed, there are still substantive claims against Defendant

Rauchway that remain.  Accordingly, I do not find that sanctions against Plaintiffs' counsel is warranted.

## IV. CONCLUSION

Based on the foregoing, it is

ORDERED that Defendant Jonathan Rauchway's Motion for Sanctions Against Counsel for Plaintiffs [# 116], filed November 29, 2005, is **DENIED**.  It is

FURTHER ORDERED that Defendant Jonathan Rauchway's Motion to Dismiss Second Amended Complaint [# 160], filed February 16, 2006, is **GRANTED IN PART AND DENIED IN PART** as described in this Order.  It is

FURTHER ORDERED that Douglas County Defendants' Motion to Dismiss Second Amended Complaint [# 169], filed February 27, 2006, is **GRANTED IN PART AND DENIED IN PART** as described in this Order.  It is

FURTHER ORDERED that Defendants Columbia State Bank's and Elizabeth Anderson's Renewed Motion to Dismiss and Request for Attorney's Fees [# 180], filed March 3, 2006, is **GRANTED IN PART AND DENIED IN PART** as described in this Order.  It is

FURTHER ORDERED that Arapahoe Defendants' Motion to Dismiss and Motion for Summary Judgment [# 210], filed April 18, 2006, is **GRANTED IN PART AND DENIED IN PART** as described in this Order.

Dated: September 26, 2006

                                        BY THE COURT:

                                        s/ Wiley Y. Daniel
                                        Wiley Y. Daniel
                                        U. S. District Judge