IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Civil Action No. 05-cv-00687-WYD-BNB

GREGORY A. DAVISCOURT, et al.,

    Plaintiffs,

v.

COLUMBIA STATE BANK, et al.,

    Defendants.

---

**ORDER**

---

THIS MATTER comes before the Court on Columbia State Bank's Motion for Summary Judgment (docket #314), filed June 1, 2007. After reviewing the motion as well as the response and reply, I find that Defendant Columbia State Bank's Motion for Summary Judgment should be granted. My analysis is set forth below.

**I.**      <u>**BACKGROUND**</u>

Plaintiffs' Second Amended Complaint for Damages asserts claims under 42 U.S.C. § 1983 and assorted Colorado state law causes of action against various Defendants. At issue in this Order are Plaintiffs' claims asserted against Defendants Columbia State Bank and Elizabeth Anderson. In previous Orders, I have set forth detailed recitations and analyses of the pertinent facts of this case. Accordingly, those facts and analyses are incorporated by reference in this Order. Additionally, I find that the following facts are also relevant to the particular motion at issue.

On or about December 31, 2003, Deputy Lightfoot of the Douglas County,

Colorado Sheriff's Department's Civil Warrants Division selected, from the top of a stack of outstanding warrants, the bench warrants for the arrests of Plaintiffs Gregory and Patricia Daviscourt. Deputy Lightfoot testified that he decided to work on the Daviscourt arrest warrants that day because he was "prioritizing." (Lightfoot Dep. pp. 52-53, May 4, 2007.) Deputy Lightfoot chose to act upon the Daviscourt warrants after determining that they involved "[t]wo people, same name, same location," and "[b]oth were high-dollar amount bonds." (Lightfoot Dep. p. 53.) Deputy Lightfoot, and no one else, decided which warrants in the stack he would act upon on December 31, 2003. (Lightfoot Dep. pp. 78-79.) Deputy Lightfoot selected the time, place and manner to arrest Patricia Daviscourt. (Lightfoot Dep. pp. 79-80.)

Deputy Lightfoot testified that prior to his deposition on May 4, 2007, he had never heard of Defendants Columbia State Bank or Columbia State Bank's President, Elizabeth Anderson. (Lightfoot Dep. p. 35.) Deputy Lightfoot further testified that to the best of his knowledge, neither Elizabeth Anderson nor any other representative of Columbia State Bank has ever contacted him or anyone else from the Douglas County Sheriff's Department. Deputy Lightfoot also stated that he was not aware that any representative from the Douglas County Sheriff's Department has ever contacted Columbia State Bank. (Lightfoot Dep. pp. 35-36, 38-39, 41.)

Detective Hathaway of the Douglas County Sheriff's Department was present as back-up during the arrest of Patricia Daviscourt. Following Patricia Daviscourt's arrest, Detective Hathaway proceeded to contact Detective Zborowski of the Arapahoe County Sheriff's Department to assist him in arresting Gregory Daviscourt on the bench

warrant. (Hathaway Dep. pp. 14-15, 17, May 2, 2007.) Sergeant OstrowskI of the Douglas County Sheriff's Department and Deputy Draper of the Arapahoe County Sheriff's Department also assisted in the arrest of Gregory Daviscourt. (Hathaway Dep. pp. 17-18.) The aforementioned officers arrested Gregory Daviscourt at his office building on December 31, 2003. Prior to his deposition on May 2, 2007, Detective Hathaway testified that he had never heard of Defendants Columbia State Bank or Elizabeth Anderson. (Hathaway Dep. pp. 40-42, 47.) Detective Hathaway testified that to the best of his knowledge, neither Defendant Anderson nor any other Columbia State Bank representative has ever contacted him or any other Arapahoe County Sheriff's Department representative. Further, to the best of Detective Hathaway's knowledge, no representative of the Arapahoe County Sheriff's Department has ever contacted Defendant Columbia State Bank. (Hathaway Dep. pp. 41-42.)

Prior to his deposition on May 3, 2007, Detective Zborowski testified that he had never heard of Defendants Columbia State Bank or Elizabeth Anderson. (Zborowski Dep. pp. 45-46, 50, May 3, 2007.) Detective Zborowski testified that to the best of his knowledge, neither Defendant Anderson nor any other Columbia State Bank representative has ever contacted him or any other Arapahoe County Sheriff's Department representative. Further, to the best of Detective Zborowski's knowledge, no representative of the Arapahoe County Sheriff's Department has ever contacted Defendant Columbia State Bank. (Zborowski Dep. pp. 45-47.)

Defendant Elizabeth Anderson stated in her affidavit dated May 24, 2007, that to the best of her knowledge, the only contact she or any other Columbia State Bank

representative had with the Douglas or Arapahoe County Sheriff's Departments was

> one, single phone call which I made to ask what was going on with respect to the bench warrants which were issued for Gregory and Patricia Daviscourts' arrests by the Arapahoe County District court, which was a phone call answered and responded to by someone who identified herself as some kind of clerk or administrative person.

(Anderson Aff. 1.) Defendant Anderson further averred that to the best of her knowledge, neither she nor any other Columbia State Bank representative "knew that the Douglas or Arapahoe County Sheriff's Departments intended to act on the Bench Warrants on December 31, 2003." (Anderson Aff. 1.) Defendant Anderson also stated that neither she, nor any other Columbia State Bank representative "had any knowledge of, involvement in, or control over, the timing, method or manner of either of the Daviscourts' arrests." (Anderson Aff. 1.) Finally, in her affidavit, Defendant Anderson stated that was not aware of the Daviscourts' arrests until after they occurred. She was on a ski vacation when the arrests took place. (Anderson Aff. 2.)

On November 8, 2007, Carol A. Tornblom, warrants clerk for the Douglas County Sheriff's Department, testified that she has no recollection of speaking with any representative of Defendant Columbia State Bank in connection with the Daviscourts' bench warrants. (Tornblom Dep. p. 34, November 8, 2007.) She further testified that according to her ordinary and customary business practices and procedures, if someone from the bank had called, she would not have told them anything about the status of a warrant from another jurisdiction (like the subject bench warrants which were issued by the Arapahoe County District Court) but, instead, she would have referred

representative had with the Douglas or Arapahoe County Sheriff's Departments was

> one, single phone call which I made to ask what was going on with respect to the bench warrants which were issued for Gregory and Patricia Daviscourts' arrests by the Arapahoe County District court, which was a phone call answered and responded to by someone who identified herself as some kind of clerk or administrative person.

(Anderson Aff. 1.) Defendant Anderson further averred that to the best of her knowledge, neither she nor any other Columbia State Bank representative "knew that the Douglas or Arapahoe County Sheriff's Departments intended to act on the Bench Warrants on December 31, 2003." (Anderson Aff. 1.) Defendant Anderson also stated that neither she, nor any other Columbia State Bank representative "had any knowledge of, involvement in, or control over, the timing, method or manner of either of the Daviscourts' arrests." (Anderson Aff. 1.) Finally, in her affidavit, Defendant Anderson stated that was not aware of the Daviscourts' arrests until after they occurred. She was on a ski vacation when the arrests took place. (Anderson Aff. 2.)

On November 8, 2007, Carol A. Tornblom, warrants clerk for the Douglas County Sheriff's Department, testified that she has no recollection of speaking with any representative of Defendant Columbia State Bank in connection with the Daviscourts' bench warrants. (Tornblom Dep. p. 34, November 8, 2007.) She further testified that according to her ordinary and customary business practices and procedures, if someone from the bank had called, she would not have told them anything about the status of a warrant from another jurisdiction (like the subject bench warrants which were issued by the Arapahoe County District Court) but, instead, she would have referred

representative had with the Douglas or Arapahoe County Sheriff's Departments was

> one, single phone call which I made to ask what was going on with respect to the bench warrants which were issued for Gregory and Patricia Daviscourts' arrests by the Arapahoe County District court, which was a phone call answered and responded to by someone who identified herself as some kind of clerk or administrative person.

(Anderson Aff. 1.) Defendant Anderson further averred that to the best of her knowledge, neither she nor any other Columbia State Bank representative "knew that the Douglas or Arapahoe County Sheriff's Departments intended to act on the Bench Warrants on December 31, 2003." (Anderson Aff. 1.) Defendant Anderson also stated that neither she, nor any other Columbia State Bank representative "had any knowledge of, involvement in, or control over, the timing, method or manner of either of the Daviscourts' arrests." (Anderson Aff. 1.) Finally, in her affidavit, Defendant Anderson stated that was not aware of the Daviscourts' arrests until after they occurred. She was on a ski vacation when the arrests took place. (Anderson Aff. 2.)

On November 8, 2007, Carol A. Tornblom, warrants clerk for the Douglas County Sheriff's Department, testified that she has no recollection of speaking with any representative of Defendant Columbia State Bank in connection with the Daviscourts' bench warrants. (Tornblom Dep. p. 34, November 8, 2007.) She further testified that according to her ordinary and customary business practices and procedures, if someone from the bank had called, she would not have told them anything about the status of a warrant from another jurisdiction (like the subject bench warrants which were issued by the Arapahoe County District Court) but, instead, she would have referred

them to Arapahoe County.  (Tornblom Dep. pp. 34-36.)  Ms. Tornblom also stated that she did not have the authority to tell any of the deputies who actually served warrants which warrants to serve, when to serve them or how to serve them.  (Tornblom Dep. pp. 36-38.)

Following their arrests on the bench warrants, Gregory and Patricia Daviscourt filed bankruptcy proceedings in the United States Bankruptcy Court for the District of Colorado.  (Bank's Answer ¶ 27.)  The Bank filed an adversary proceeding requesting that its judgment not be discharged on the grounds that the Daviscourts had defrauded the Columbia State Bank.  (Id.)  Plaintiff Karl Daviscourt, the father of Gregory Daviscourt, funded his son and daughter-in-law's defense of that adversary proceeding.  (Id. at 28.)  Following a trial on the merits, the Bankruptcy Court ordered that Columbia State Bank's judgments against Gregory and Patricia Daviscourt not be discharged.  (Id. at 30.)  Then, Columbia State Bank conducted debtors' examinations of the Daviscourts and discovered that after the Bankruptcy Court entered the Judgment of Non-Dischargeability, Gregory and Patricia Daviscourt signed a promissory note in favor of Karl Daviscourt in the amount of the attorneys' fees and costs he had advanced to pay for their representation in the Washington Lawsuit, the Colorado collection proceedings, the Bankruptcy Proceedings, the adversary proceeding, and in the instant case, and secured the Note with all or substantially all of Gregory and Patricia Daviscourt's assets, including their interest in any amounts they are awarded as damages in this case.  (Id. at 33.)  On September 26, 2207, the Douglas County, Colorado District Court, having conducted a trial, found that this constituted a

-5-

fraudulent transfer and set the transaction aside. (*See* Douglas County District Court's Order and Entry of Judgment Dated September 26, 2007, Case Number 06CV1337.)

## II. **DEFENDANT COLUMBIA STATE BANK'S MOTION FOR SUMMARY JUDGMENT (docket #314), filed June 1, 2007**

By way of background, I dismissed a number of the Plaintiffs' claims in an Order issued on September 26, 2006. In that Order, I found that Defendants Columbia State Bank and Elizabeth Anderson were not acting under the color of state law when they invoked the legal procedures set forth in Colo. R. Civ. P. 69. Therefore, all but one of Plaintiffs' claims asserted under 42 U.S.C. § 1983 were dismissed against Defendants Columbia State Bank and Elizabeth Anderson. (Order at 14.) Defendant Columbia State Bank and Elizabeth Anderson ("Bank Defendants") now request that summary judgment be entered on the remaining claims against them: (1) 42 U.S.C. § 1983 conspiracy; (2) common law conspiracy; (3) outrageous conduct; and (4) abuse of process. The Bank Defendants filed their motion for summary judgment on June 1, 2007. A response was filed on August 14, 2007, and a reply was filed on October 15, 2007. I also note that on September 26, 2007, I issued an Order granting Defendant Jonathan Rauchway's Motion for Summary Judgment. Thus, any arguments raised in the instant motion that were previously ruled on in connection with Mr. Rauchway's Motion for Summary Judgement are denied as moot.

### A. **Standard of Review**

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where "the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the . . . moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Equal Employment Opportunity Comm. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000). "When applying this standard, the court must 'view the evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.'" *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (quotation omitted). All doubts must be resolved in favor of the existence of triable issues of fact. *Boren v. Southwestern Bell Tel. Co.*, 933 F.2d 891, 892 (10th Cir. 1991).

In the Tenth Circuit, evidence considered by the court in ruling on a motion for summary judgment must be evidence that is admissible at trial. "It is well settled in this circuit that we can consider only admissible evidence in reviewing an order granting summary judgment." *Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1541 (10th Cir. 1995). "Hearsay testimony cannot be considered because "[a] third party's description of [a witness'] supposed testimony is not suitable grist for the summary judgment mill." *Id.* (internal citations omitted). Further, under Rule 56(e), evidence offered in opposition to a motion for summary judgment must be "'made on personal knowledge . . . set forth such facts as would be admissible in evidence, and . . . show affirmatively that the witness is competent to testify to the matters' set forth therein." *Id.*

### B.    Conspiracy Claim Under 42 U.S.C. § 1983

The Tenth Circuit has stated that "a conspiracy to deprive a plaintiff of a

constitutional or federally protected right under the color of state law" is actionable. *Snell v. Tunnell*, 920 F.2d 673, 701 (10th Cir. 1990). However, in order to succeed on a conspiracy claim under 42 U.S.C. § 1983, "a plaintiff must plead and prove not only a conspiracy, but also an actual deprivation of rights; pleading and proof of one without the other will be insufficient." *Id.* Further, "[w]hile a deprivation of a constitutional right is essential to proceed under a § 1983 claim, proof of an agreement to deprive will often require examination of conduct occurring prior to the deprivation." *Id.* at 701-02. To establish the existence of a conspiracy, a plaintiff seeking redress must show that there was a "single plan, the essential nature and general scope of which [was] known to each person who is to be held responsible for its consequences." *Id.* (internal citations omitted). Finally, the Tenth Circuit has stated that a claim for conspiracy must often be proven with circumstantial evidence because "[r]arely . . . will there be direct evidence of an express agreement among . . . the conspirators." *Id.*

In my Order dated September 26, 2006, I found that the Bank Defendants were not state actors, rather they were acting as private actors in carrying out the legal procedures set forth in Colo. R. Civ. P. 69. (Order at 14.) With respect to the Bank Defendants' status as private actors, the Tenth Circuit has held that a 42 U.S.C. §1983 conspiracy claim may arise when a private actor conspires with a state actor to deprive an individual of a constitutional right under color of state law. *Dixon v. City of Lawton, Oklahoma*, 898 F.2d 1443, 1449 (10th Cir. 1990). In order to prove whether a private actor actively conspired with a state officer, the plaintiff must demonstrate the "existence of a significant nexus or entanglement between the absolutely immune state

officer and the private party in relation to the steps taken by each to fulfill the objects of their conspiracy." *Shaffer v. Cook*, 634 F.2d 1259, 1260 (10th Cir. 1980).

In order to establish a § 1983 conspiracy claim against a private actor, the Plaintiffs must establish the following elements: (1) an agreement between the private and public defendants to commit an unlawful act and (2) an actual deprivation of rights. *Thompson v. City of Lawrence*, 58 F.3d 1511, 1517 (10th Cir. 1995). In the case at hand, the Bank Defendants first argue that there was no agreement between Columbia State Bank and the Douglas or Arapahoe County Sheriff's Departments. Second, the Bank Defendants argue that there was no agreement relating to any unlawful conduct.

Defendant Elizabeth Anderson avers in her affidavit that the only contact or communication she or any representative of Columbia State Bank had with the Douglas or Arapahoe County Sheriff's Department in connection with the Daviscourts' warrants was a single phone call. Defendant Anderson states that she called the Sheriff's Department to inquire about the status of the Daviscourts' bench warrants and spoke with an administrative person. Defendant Anderson averred that she never spoke with a Sheriff's officer, but with "an office lady in the office." (Anderson Aff.) Additionally, Ms. Tornblom, warrants clerk from the Douglas County Sheriff's Department, testified in her deposition that she has never heard of the Bank Defendants and never answered a phone call from any representative of the bank in connection with the Daviscourts' warrants. Moreover, the officers involved with the execution of the warrants (Deputy Lightfoot, Detective Hathaway, and Detective Zborowski) all testified in their depositions that they had never heard of the Bank Defendants prior to the date of their

depositions. Accordingly, the Bank Defendants argue that there is no admissible evidence that there was any communication or agreement with the Douglas or Arapahoe County Sheriff's Departments to commit or participate in an unlawful act. Therefore, there is no evidence that the Bank Defendants were in any way involved or entangled in an unlawful agreement with an immune state actor.

Plaintiffs, on the other hand, argue that the Bank Defendants' motion for summary judgment should be denied because there are genuine issues of material fact. However, I note that the majority of Plaintiffs' response contains information that is not relevant to the underlying elements of their conspiracy claim under 42 U.S.C. § 1983. Therefore, I will only address the relevant and admissible evidence pertaining to this claim.

With respect to the first element of the conspiracy claim, whether the Bank Defendants engaged in an unlawful agreement with a state actor, Plaintiffs state in their response that

> a jury could find that the defendants wanted to use the arrest warrants for three improper purposes: (1) to aid in the Bank's debt-collection process by threatening arrest if the Daviscourt family did not pay the Bank money, and/or (b) to incarcerate the Daviscourts even though the Bank knew that their bankruptcy filing was imminent and would void the Rule 69 proceedings, and/or (c) to punish the Daviscourts by jailing them for failing to pay the Bank money.

(Pls. Resp. at 39-40.) Plaintiffs further argue that Defendant Anderson "admitted in deposition that she contacted the sheriff's office about service of the warrants." (Pls. Resp. at 42.) "A jury could infer from that evidence that actions by Bank defendant

Elizabeth Anderson caused the police to make the execution of the warrants on Greg and Patty Daviscourt a priority . . ." (Pls. Resp. at 42.)

Turning to my analysis, as stated above, the Tenth Circuit has held that in order to prove whether a private actor actively conspired with a state officer, the plaintiff must demonstrate the "existence of a significant nexus or entanglement between the absolutely immune state officer and the private party in relation to the steps taken by each to fulfill the objects of their conspiracy." *Shaffer v. Cook*, 634 F.2d 1259, 1260 (10th Cir. 1980). Further, "[c]onclusory allegations of conspiracy are insufficient to support a valid § 1983 claim. *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998). In the case at hand, the Plaintiffs fail to present admissible evidence of an agreement between the Bank Defendants and a state actor to commit an unlawful act and an actual deprivation of rights in support of their conspiracy claim. According to the sworn affidavit of Defendant Anderson, she did nothing more than place a single phone call to the Sheriff's Department to inquire about the status of the Daviscourts' warrants. She never spoke with an officer, rather, she talked to an administrative person. Further, Ms. Tornblom testified that she had no recollection of answering a phone call from Defendant Anderson in connection with the Daviscourts' warrants. Moreover, the officers involved with the Daviscourts' arrests testified at their depositions that they had never heard of the Bank Defendants much less participated in any agreement to commit an unlawful act. While the Plaintiffs make speculations and conclusions that Defendant Anderson's phone call to the Sheriff's Department was some sort of unlawful agreement to have the Daviscourts arrested, I find that these

conclusory allegations are not supported by admissible evidence.

In fact, after reviewing all of the relevant evidence and viewing that evidence in the light most favorable to the Plaintiffs, I find that there is no admissible evidence that creates a genuine issue of material fact or supports Plaintiffs' claim that the Bank Defendants engaged in an agreement with a public official (the Douglas or Arapahoe County Sheriff's Departments) to commit an unlawful act. I find that the evidence supports the Bank Defendants' position that they were not involved in any type of conspiracy. Thus, in light of my finding that there is no evidence to substantiate the first element of the conspiracy claim under 42 U.S.C. § 1983, I need not address the second element of a deprivation of Plaintiffs' constitutional rights. Accordingly, summary judgment should be entered in favor of the Bank Defendants on Plaintiffs' conspiracy claim under 42 U.S.C. § 1983 as a matter of law.

C.  **Common Law Conspiracy Claim Under State Law**

To establish a claim for common law conspiracy under Colorado law, a plaintiff must show the existence of : "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) an unlawful overt act; and (5) damages as to the proximate result." *Nelson v. Elway*, 908 P.2d 102, 106 (Colo. 1996). The Colorado Supreme Court went on to say that "[t]he court will not infer the agreement necessary to form a conspiracy; evidence of such agreement must be presented by the plaintiff." *Id.* "Additionally, the purpose of the conspiracy must involve an unlawful act or unlawful means. A party may not be held liable for doing in a proper manner that which it had a lawful right to do." *Id.*

Based on my analysis of the relevant facts in Section II(B) of this Order and the law set forth above, I find that after viewing the evidence in the light most favorable to the Plaintiffs, the Plaintiffs have failed to prove the elements necessary for the existence of a common law conspiracy. Plaintiffs have neither offered admissible evidence creating a genuine issue of material fact nor admissible evidence giving rise to any "meeting of the minds" or "unlawful overt act" required to support a common law conspiracy claim. Accordingly, summary judgment should be entered in favor of the Bank Defendants on Plaintiffs' common law conspiracy claim as a matter of law.

### D. **Outrageous Conduct Claim**

To establish a claim for outrageous conduct under Colorado law, a plaintiff must show that: "(1) the defendant engaged in extreme and outrageous conduct; (2) the defendant engaged in such conduct recklessly or with the intent of causing the plaintiff severe emotional distress; and (3) the defendant's conduct caused plaintiff to suffer severe emotional distress." *McCarty v. Kaiser-Hill Co., L.L.C.*, 15 P.3d 1122, 1126 (Colo. App. 2000), *cert. denied* (Jan. 2001). "Although the question whether conduct is outrageous is generally one of fact to be determined by a jury, it is the initial responsibility of a court to determine whether reasonable persons could differ on the question." *Id.* "The level of outrageousness required for conduct to create liability for intentional infliction of emotional distress is extremely high." *Id.* "Liability has been found only where the conduct has been so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* "Proof of the tort of

outrageous conduct must consist of either an extreme act, both in character and degree, or a pattern of conduct from which the ineluctable conclusion is the infliction of severe mental suffering was calculated or recklessly and callously inflicted." *Gard v. Teletronics Pacing Systems, Inc.*, 859 F. Supp. 1349 (D. Colo. 1994).

In *McCarty*, the plaintiff alleged that supervisors sought to drive him out of his employment through a pattern of intimidation and harassment. *McCarty*, 15 P.3d at 1126. That harassment included not only psychological harassment, such as threatening phone calls, but even physical intimidation in the form of two vehicular assaults. The plaintiff also alleged that "he was uniquely vulnerable to severe emotional distress and was singled out for subjection to harassment and intimidation." *Id.* The Colorado Court of Appeals held that the plaintiff had not presented sufficient evidence from which a jury could find that the conduct of defendants was outrageous. *See also Coors Brewing Co. v. Floyd*, 978 P.2d 663, 666 (Colo. 1999) (en banc) (the allegations "that Coors engaged in an extensive criminal conspiracy involving illegal drugs and money laundering and that Coors fired Floyd to scapegoat him for these crimes" was not outrageous as a matter of law ); *Pascouau v. Martin Marietta Corp.*, 1999 WL 495621 (10th Cir. 1999) (no outrageous conduct even though plaintiff alleged that co-workers and supervisors frequently engaged in lewd discussions about sex and their sexual experiences, brought sexually suggestive materials into the office, speculated about the plaintiff's sexual preferences, called her nicknames referring to her breast size, and ridiculed and belittled her).

In the case at hand and based on my previous analysis, I find there is no

admissible evidence that creates a genuine issue of material fact with respect to Plaintiffs' outrageous conduct claim. Basically, the Plaintiffs' claim that the Bank Defendants coerced money from the Plaintiffs "under threat of arrest." (Pls. Resp. at 51.) Plaintiffs further claim argue that the Bank Defendants' actions of: (1) having Rule 69 subpoenas issued; (2) obtaining the original bench warrants; (3) declining to request that the Arapahoe County District Court vacate the warrants after the court re-activated them *sui sponte*; (4) placing a phone call to the Sheriff's Department to inquire about the status of the warrants; and (5) waiting for law enforcement to act upon those warrants constitute actions that rise to the level of outrageous conduct. However, Plaintiffs' claims are conclusory allegations not supported by any admissible evidence. Based on the admissible evidence before me and viewing it in the light most favorable to the Plaintiffs, I do not find that the Bank Defendants' conduct rose to the level of being "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Accordingly, summary judgment should be entered in favor of the Bank Defendants on Plaintiffs' outrageous conduct claim as a matter of law.

### E. Abuse of Process Claim

To establish a claim for abuse of process under Colorado law, a plaintiff must prove the following elements: "(1) an ulterior purpose for the use of a judicial proceeding; (2) willful action in the use of that process which is not proper in the regular course of the proceedings; and (3) resulting damages." *Moore & Assocs. Realty, Inc. v. Arrowhead at Vail*, 892 P.2d 367, 373 (Colo. App. 1994).

Again, Plaintiffs put forth the same aforementioned conclusory allegations to support this claim or to create a genuine issue of material fact. Specifically, Plaintiffs claim that the Bank Defendants used "the pending arrest warrants as a bargaining chip to attempt to coerce Gregory and Patricia Daviscourt into settlement." (Pls. Resp. at 50.) However, there is no admissible evidence to support Plaintiff's contentions. The Bank Defendants state that they did not use the legal process in a way that was improper in the regular course of ordinary collection proceedings. The Bank Defendants further deny that they had any motive for issuing the Rule 69 subpoenas and obtaining the bench warrants other than to discover information regarding the Plaintiffs' finances in order to collect the judgment recorded in the state of Washington. Additionally, I have previously ruled that the bench warrants issued by the Arapahoe County District Court on December 18, 2003, were facially valid. Based on the facts and admissible evidence before me, I find there is no genuine issue of material fact to support Plaintiffs' abuse of process claim against the Bank Defendants. Accordingly, summary judgment should be entered in favor of the Bank Defendants on Plaintiffs' abuse of process claim as a matter of law.

### III.   CONCLUSION

Based on the foregoing, it is

ORDERED that Columbia State Bank's Motion for Summary Judgment (docket #314), filed June 1, 2007, is **GRANTED** and Plaintiffs' claims against the Bank Defendants, Columbia State Bank and Elizabeth Anderson, are **DISMISSED WITH PREJUDICE**. It is

FURTHER ORDERED that the Clerk of the Court shall amend the case caption to reflect this order.

Dated: January 9, 2008

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
U. S. District Judge