IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Civil Action No. 05-cv-00687-WYD-BNB

GREGORY A. DAVISCOURT, et al.,

    Plaintiffs,

v.

COLUMBIA STATE BANK, et al.,

    Defendants.

**ORDER**

I.    INTRODUCTION

THIS MATTER comes before the Court on the following motions: (1) Arapahoe Defendants' Motion for Summary Judgment (docket #386), filed December 4, 2007; (2) Arapahoe Defendants' Motion to Strike Inadmissible Evidence from Portions of Plaintiffs' Affidavits and Response Briefs (docket #443), filed February 21, 2008; and (3) Douglas County Defendants' Motion for Summary Judgment (docket #388), filed December 4, 2007. In its response to the motions for summary judgment, the Plaintiffs indicated that they "concede the dismissal of the conspiracy claim, given the record and the Court's prior rulings."[1] (Pls' Resp. to Arapahoe Defs' Mot. at 47.) Accordingly, I grant summary judgment in favor of the Defendants as to Plaintiffs' claims for conspiracy. For the reasons stated below, I grant summary judgment in favor of the

---

[1] By way of background, I note that on September 26, 2007, I granted Defendant Rauchway's Motion for Summary Judgment. On January 9, 2008, I granted the Bank Defendants' Motion for Summary Judgment. On April 21, 2008, I denied Plaintiff's Motion for Partial Summary Judgment.

Defendants on Plaintiffs' claim of unreasonable seizure. The motions are denied in all other respects.

II.     BACKGROUND

Plaintiffs' Second Amended Complaint for Damages asserts claims under 42 U.S.C. § 1983 and assorted Colorado state law causes of action against various Defendants. At issue in this Order are Plaintiffs' claims asserted against the Arapahoe County Defendants and the Douglas County Defendants. Specifically, with respect to the Arapahoe County Defendants, the Plaintiffs allege Fourth Amendment violations of unreasonable seizure and unreasonable force against Deputies Zborowski and Draper. With respect to the Douglas County Defendants, the Plaintiffs allege a Fourth Amendment violation of unreasonable seizure against Deputies Lightfoot and Hennessey and a Fourth Amendment violation of unreasonable force against Deputy Hathaway. Plaintiffs also allege a claim for municipal liability against both Arapahoe County and Douglas County. In previous Orders, I have set forth detailed recitations and analyses of the pertinent facts of this case. Accordingly, those facts and analyses are incorporated by reference in this Order. Additionally, I find that the following facts are also relevant to the particular motions at issue.

   A.     Relevant Facts Concerning the Arrest of Plaintiff Patty Daviscourt

On December 18, 2003, the Arapahoe County District Court ordered bench warrants for Plaintiffs Greg and Patty Daviscourt for failure to appear and ordered bond to be set at $50,000 for each of them. The warrants correctly identified the persons to be arrested and stated that they were misdemeanor warrants for failure to appear. The warrants were facially valid.

On or about December 31, 2003, Deputy Lightfoot of the Douglas County Sheriff's Department selected, from the top of a stack of outstanding warrants, the bench warrants for the arrests of Plaintiffs Greg and Patty Daviscourt. Deputy Lightfoot set out to arrest Patty Daviscourt on the bench warrant. When his cover officer, Deputy Hennessey, arrived at the scene, Deputy Lightfoot made the arrest of Patty Daviscourt. Deputy Lightfoot waited for someone to pick up Patty Daviscourt's children, and then he arrested Patty Daviscourt and transported her to the Douglas County jail without incident. Following the arrest of Patty Daviscourt, Deputy Lightfoot informed Douglas County Deputy Hathaway of the second warrant for Greg Daviscourt. Since Greg Daviscourt was located outside the jurisdiction of the Douglas County Sheriff's Office, Deputy Hathaway contacted Deputy Zborowski from the Arapahoe County Sheriff's Office. Deputy Hathaway traveled to Arapahoe County to assist the Arapahoe County Deputies with the arrest of Greg Daviscourt. When he arrived at Greg Daviscourt's place of business, he discussed the warrant with Arapahoe County Deputies Zborowski and Draper and another Douglas County Deputy, Deputy Ostrowski.

B. <u>Relevant Facts Concerning the Arrest of Plaintiff Greg Daviscourt</u>

On December 18, 2003, the Arapahoe County District Court ordered bench warrants for Plaintiffs Greg and Patty Daviscourt for failure to appear and ordered bond to be set at $50,000 for each of them. The bench warrant for Greg Daviscourt was valid at the time of his arrest on December 31, 2003. In his declaration, Arapahoe County Sheriff ("ACS") Deputy Zborowski stated that on December 31, 2003, Douglas County Deputy Hathaway contacted him and said he was on his way to an address in Centennial, Colorado and requested the involvement of ACS Deputies because the

subject was located in Arapahoe County's jurisdiction. Hathaway gave Deputy Zborowski a physical description of Greg Daviscourt and told him that there was a $50,000 bond for his arrest. Zborowski then asked a uniformed ACS Deputy, Kelly Draper, for his assistance, and Draper agreed to meet Zborowski at the location.

Draper notified ACS Communication Services Division ("Dispatch") that he was responding to the location, and he proceeded to the scene in the marked vehicle he was driving. Prior to approaching the building, Zborowski, Draper, Hathaway and Ostrowski discussed a plan to apprehend and arrest Greg Daviscourt. The Deputies stated that they could not see through the window tinting on the doors to the office building, and Draper told Dispatch that the doors were covered. Greg Daviscourt, however, maintains that one can see through the doors to the office building. Zborowski, Hathaway, and Ostrowski went to the front entrance of the building to attempt contact with Greg Daviscourt.

The Deputies knocked on Greg Daviscourt's office door and announced law enforcement presence, but there was no response. Thus, they continued to knock and identify themselves. The Deputies further stated that they started banging on the door and ordering Greg Daviscourt to exit the building. Greg Daviscourt did not respond. The amount of time it took for Greg Daviscourt to exit his office is unclear. Greg Daviscourt stated that he responded promptly. In his declaration, Greg Daviscourt stated that he was on the telephone with his father when he heard someone knocking and shouting outside his main office door. Greg Daviscourt further stated that he responded to the knocking within a minute, possibly less. However, according to the ACS Dispatch Report, there was a period of 33 minutes between the time the Deputies

first knocked on the door of Greg Daviscourt's office until the time Greg Daviscourt was taken into custody. In his deposition, Deputy Hathaway estimated that Greg Daviscourt opened the door about ten minutes after the Deputies knocked. Deputy Zborowski stated that it took Greg Daviscourt about 20-30 minutes to exit his office.

One of the Douglas County Sheriff's Deputies told Draper that Greg Daviscourt was barricaded inside the building and was refusing to exit. Draper told Dispatch that Greg Daviscourt was barricaded inside his office. This resulted in other officers responding to the scene. However, Greg Daviscourt maintains that he did not barricade himself inside his office. Zborowski perceived a risk of danger to himself and the other officers, and in order to protect himself and the other Deputies, he retrieved his rifle and bulletproof vest from his vehicle. Greg Daviscourt stated that the Deputies put on their bulletproof vests after they parked their cars and drew their weapons before they knocked on Greg Daviscourt's door. In his declaration, Zborowski stated that he stood approximately 10-15 feet away from the front door and held his rifle aimed at the ground in a "low-ready" position while the other Deputies approached the door. Greg Daviscourt stated that weapons were pointed at his head and chest and that Zborowski was 3-6 feet from Greg Daviscourt when he exited the building.

Zborowski stated that before the Deputies forced the entry, Greg Daviscourt exited the building. Zborowski aimed his rifle at Greg Daviscourt's chest for about 30-60 seconds. As Greg Daviscourt exited the building, he continued speaking on his cell phone for about 30-60 seconds and neither put his hands in the air nor got on the ground even though the officers repeatedly ordered him to do so. Greg Daviscourt maintains that he complied with the officers' orders immediately. When Greg

Daviscourt exited the building, some of the Deputies pointed their weapons at him, but did not place their fingers on the triggers. Greg Daviscourt maintains that the Deputies did have their fingers on the triggers. Zborowski stated that he pointed his rifle at Greg Daviscourt to protect himself, the other Deputies, and to ensure Greg Daviscourt was safely taken into custody. Greg Daviscourt stated that he dropped to the ground, and an unidentified Deputy placed his knee into Greg Daviscourt's back. The Deputies stated that they have no knowledge of anyone placing a knee into Greg Daviscourt's back. Greg Daviscourt was placed in handcuffs. Greg Daviscourt maintains that the Deputies continued pointing their weapons at him until after he was handcuffed and brought to his feet. The Deputies stated that they pointed their weapons at Greg Daviscourt only until he was secured. Greg Daviscourt was taken into custody at 15:07:55. Draper verified through ACS Dispatch that the warrant for Greg Daviscourt was valid, and then he transported him to the Arapahoe County Jail. No SWAT team was deployed to the scene and none of the Daviscourt children nor Patty Daviscourt were present during the arrest of Greg Daviscourt.

III.   STANDARD OF REVIEW

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the . . . moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Equal Employment Opportunity Comm. v. Horizon/CMS Healthcare Corp., 220 F.3d 1184, 1190 (10th Cir. 2000). "When applying this standard, the court must 'view

the evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.'" *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (quotation omitted). All doubts must be resolved in favor of the existence of triable issues of fact. *Boren v. Southwestern Bell Tel. Co.*, 933 F.2d 891, 892 (10th Cir. 1991).

In the Tenth Circuit, evidence considered by the court in ruling on a motion for summary judgment must be evidence that is admissible at trial. "It is well settled in this circuit that we can consider only admissible evidence in reviewing an order granting summary judgment." *Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1541 (10th Cir. 1995). "Hearsay testimony cannot be considered because "[a] third party's description of [a witness'] supposed testimony is not suitable grist for the summary judgment mill." *Id.* (internal citations omitted). Further, under Rule 56(e), evidence offered in opposition to a motion for summary judgment must be "'made on personal knowledge . . . set forth such facts as would be admissible in evidence, and . . . show affirmatively that the witness is competent to testify to the matters' set forth therein." *Id.*

IV. <u>ARAPAHOE AND DOUGLAS COUNTY DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT</u>

  A. <u>Arapahoe Defendants' Motion to Strike Inadmissible Evidence From Portions of Plaintiffs' Affidavits and Response Brief to Arapahoe Defendants' Motion for Summary Judgment (docket #443), filed February 27, 2008</u>

As an initial matter, the Arapahoe Defendants have filed a motion to strike portions of the Plaintiff's "Additional Statement of Facts" in the Plaintiffs' Response in Opposition to Arapahoe County Defendants' Motion for Summary Judgment. The Arapahoe Defendants argue that the "self-serving, conclusory affidavits from the

Plaintiffs and from lay witnesses" and the "conclusory, opinion evidence from a law enforcement expert, Lou Reiter", should be stricken and not considered by the Court. (Arapahoe Defs' Mot. to Strike at 3.) The Arapahoe Defendants further argue that this evidence fails to comport with both Fed. R. Civ. P. 56 and my Practice Standards.

Fed. R. Civ. P. 56 reads in pertinent part:

(e) Affidavits; Further Testimony.

(1) In General. A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated. If a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or served with the affidavit. The court may permit an affidavit to be supplemented or opposed by depositions, answers to interrogatories, or additional affidavits.

(2) Opposing Party's Obligation to Respond. When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

*Id.*

Turning to the case at hand, I find that this motion should be denied in that the statements and affidavits the Arapahoe Defendants are seeking to strike were not considered in my analysis. I did not evaluate the evidence that was objected to in determining my findings and conclusions with respect to the Arapahoe Defendants' motion for summary judgment. Thus, I need not address the Arapahoe Defendants' argument in its motion to strike as it is irrelevant to my analysis. Accordingly, the motion to strike is denied.

B.  Qualified Immunity

The Arapahoe and Douglas County Defendants argue that they are entitled to qualified immunity because the Plaintiffs have failed to satisfy their burden under the qualified immunity analysis. In response, the Plaintiffs argue that they were subjected to both unreasonable seizure and excessive force in violation of the Fourth Amendment.

"In civil rights actions seeking damages from governmental officials, those officials may raise the affirmative defense of qualified immunity, which protects all but the plainly incompetent or those who knowingly violate the law." *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1185 (10th Cir.2001). Once the defense is raised by a defendant, the burden shifts to the plaintiff to come forward with facts or allegations sufficient to show both "'that the defendant's actions violated a constitutional or statutory right'" and that the right "was clearly established at the time of the defendant's unlawful conduct." *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001) (quoting *Albright v. Rodriguez*, 51 F.3d 15531, 1534 (10th Cir. 1995)). *See also Workman v. Jordan*, 32 F.3d 457, 479 (10th Cir. 1994); *Mick v. Brewer*, 76 F.3d 1127, 1134 (10th Cir. 1996).

Thus, in the context of a motion for summary judgment, I must first consider whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the [official's] conduct violated a constitutional right?" *Holland*, 268 F.3d at 1185. If I determine that there has been a violation of a constitutional right, then I must "ask whether the right was clearly established at the time of defendant's unlawful conduct." *Id.* at 1186. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [official] that his

conduct was unlawful in the situation he confronted." *Id.* (internal quotation omitted). Generally, this means that "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must be as plaintiff maintains." *Farmer v. Perrill*, 288 F.3d 1254, 1259 (10th Cir. 2002). If the plaintiff successfully establishes the violation of a clearly established right, the burden then shifts to the defendant, who must prove that there are no genuine issues of material fact and that the defendant is entitled to judgment as a matter of law. *Medina*, 252 F.3d at 1128; *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002).

### 1. Unreasonable Seizure (Second Claim for Relief)

With respect to this claim, the Plaintiffs allege that the arrests of Greg and Patty Daviscourt and the seizure of the Daviscourt children violated the Fourth Amendment because the manner of service of the civil warrants was unreasonable under the circumstances. The Plaintiffs argue that prior to the arrest of Greg and Patty Daviscourt, the Deputies should have determined that the bench warrants were issued as a result of the Plaintiffs' failure to appear in court for a civil matter. The Plaintiffs further argue that the Deputies treated the warrants for the Daviscourts as criminal warrants, took them to jail, and jailed them as if they had been arrested for a crime.

I now turn to the initial inquiry in the qualified immunity analysis. I must determine whether the alleged facts show that the Deputies violated the Fourth Amendment when they executed the misdemeanor bench warrants for failure to appear and arrested Greg and Patty Daviscourt. After considering the facts presented, I find that the warrants were facially valid, and the Deputies did not act unreasonably in their execution. The face of the warrants stated that they were misdemeanor warrants for

failure to appear. There is no indication on the face of the warrants that they arose out of a civil matter. Thus, the Deputies had no knowledge that these bench warrants were any different than any other misdemeanor bench warrants.

Further, the Plaintiffs fail to cite any law supporting their argument that the Deputies should have independently researched the warrants in order to determine that they were "civil" warrants, and therefore, should have executed them in a different manner. Moreover, the Plaintiffs fail to cite any authority showing that the Deputies' conduct violated a constitutional right or that the right was clearly established. In fact, there is Tenth Circuit case law that seems to suggest the contrary argument. In *Hill v. Bogans*, 735 F.2d 391 (10th Cir. 1984), the Tenth Circuit held that "[u]nless a warrant is facially invalid an officer has no constitutional duty to independently determine its validity." *Id*. at 393. While *Hill* does not directly address the issues at hand, it seems that the Tenth Circuit is limiting the responsibility of officers to conduct independent investigations of warrants beyond their facial validity. This is contrary to the Plaintiffs' argument that the Deputies had a duty to conduct an investigation of the facts underlying the warrant. Since the Plaintiffs have provided no persuasive authority for their position, I find that the Plaintiffs have failed to satisfy their heavy burden under the qualified immunity analysis. Accordingly, I find that the Defendants are entitled to qualified immunity on the Plaintiffs' claim for unreasonable seizure.

        2.      <u>Unreasonable/Excessive Force (Third Claim for Relief)</u>

Turning again to the first step in the qualified immunity inquiry, I must determine whether "the facts alleged show the [official's] conduct violated a constitutional right?" *Holland*, 268 F.3d at 1185. "Claims of excessive force are analyzed under the objective

reasonableness standard of the Fourth Amendment." *Medina*, 252 F.3d at 1131. The reasonableness inquiry "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989). The test of reasonableness also "requires careful attention to facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* Further, "[t]he reasonableness of a particular use of force must be judged by the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.*

In the case at hand, Plaintiff Greg Daviscourt has alleged that he promptly responded to the Deputies' knock at his office door. He further maintains that he was unarmed, posed no threat to the officers, and promptly obeyed commands to get down on the ground. Greg Daviscourt also stated that despite his cooperation, the Deputies pointed their weapons at his chest and head, and continued to do so after he was handcuffed and lying on the ground. Greg Daviscourt also alleges that he was kneed in the back during his arrest by an unidentified Deputy.

Based on law stated above, I must view the Deputies' actions from the perspective of a reasonable officer at the scene. After viewing all of the facts in the light most favorable to Greg Daviscourt and analyzing the scene from the Deputies' perspectives, I find that there is at least an issue of fact as to whether Greg Daviscourt exited the building promptly as he stated or whether it took 33 minutes as the Dispatch report showed. I also note that the Deputies' estimations of the time it took for Greg

Daviscourt to exit the building were inconsistent and ranged anywhere from 10 minutes to 30 minutes. This is an important element of the analysis. If Greg Daviscourt refused to exit his office for 30 minutes and was unresponsive to the Deputies' commands, it may have been objectively reasonable for the Deputies to don bulletproof vests and brandish their weapons in preparation for a forced entry or to protect themselves. However, this analysis changes if Greg Daviscourt exited the building in less than a minute and was cooperative as he maintains. The amount of force used to place Greg Daviscourt on the ground and handcuff him may have been objectively disproportionate as he maintains that he posed no threat of danger to the Deputies.

Therefore, after viewing the facts in the light most favorable to Greg Daviscourt, I find that the *Graham* factors for a finding of reasonableness are not satisfied. If Greg Daviscourt exited the building promptly and was immediately cooperative, he likely did not pose an immediate threat to the safety of the officers and was not actively resisting arrest. Thus, I find that Greg Daviscourt has satisfied his burden under the first prong of the qualified immunity analysis by showing there was a Fourth Amendment violation.

Turning to the second prong of the qualified immunity analysis, I must determine whether Greg Daviscourt's Fourth Amendment right was clearly established at the time of the violation. The Supreme Court has held that it is clearly established that "the use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness." *Saucier v. Katz*, 533 U.S. 194, 201-02. However, that is not enough. "[T]he right the official is alleged to have violated must have been clearly established in a more particularized and . . . more relevant sense . . ." *Id.* at 202. "The relevant dispositive inquiry in determining whether a right is clearly established is

whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.*

Greg Daviscourt cites to the Tenth Circuit opinion of *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179 (10th Cir. 2001) to support his argument that his Fourth Amendment right was clearly established at the time of the unlawful conduct. In *Holland*, the Tenth Circuit held that "[t]he display of weapons, and the pointing of firearms directly at persons inescapably involves the immediate threat of deadly force." *Id.* at 1192. The Court went on to say that "[s]uch a show of force should be predicated on at least a perceived risk of injury or danger to the officers or others, based upon what the officers know at the time." *Id.* "Where a person has submitted to the officers' show of force without resistance, and where an officer has no reasonable cause to believe that person poses a danger to the officer or to others, it may be excessive and unreasonable to continue to aim a loaded firearm directly at that person . . ." *Id.*

I agree with Greg Daviscourt that the *Holland* case clearly establishes that if Greg Daviscourt indeed posed no threat or risk of danger to the Deputies, it was a violation of the Fourth Amendment for the Deputies to point their weapons at him for a continued period of time. Thus, Greg Daviscourt has satisfied the heavy two-part burden to avoid summary judgment based on qualified immunity. I further find that the Defendants have failed to show that there are no genuine issues of material fact. As previously noted, I find there are factual issues as to when Greg Daviscourt exited the building and whether he was immediately cooperative and responsive to the Deputies' commands. Accordingly, I find that summary judgment is not proper on Greg Daviscourt's claim of unreasonable force.

### C. Municipal Liability (Sixth and Seventh Claims for Relief)

The Plaintiffs also assert a claim for municipal liability against both Douglas County and Arapahoe County. "'[I]n order to hold a municipality liable for an employee's constitutional violations, a plaintiff must show not only that a constitutional violation occurred, but also that some municipal policy was the moving force behind the violation.'" *DeAnzona v. City and County of Denver*, 222 F.3d 1229, 1236 (10th Cir. 2000) (quotation omitted). "Where the official policy that forms the basis of a local government liability claim consists of a failure to act, the plaintiff 'must demonstrate that the municipality's inaction was the result of deliberate indifference to the rights of its inhabitants.'" *Hollingsworth v. Hill*, 110 F.3d 733, 745 (10th Cir. 1997) (quotation omitted). "A municipality may not be held liable under § 1983 simply because it employs a person who violated a plaintiff's federally protected rights." *Crownover v. City of Lindsay, Ok.*, 229 F.3d 1162, *2 (10th Cir. 2000) (citing *Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 694 (1978)).

As more fully set forth in my analysis in section IV(B)(2), I find that there is a Fourth Amendment violation of excessive force. I also find that there are genuine issues of material fact surrounding the arrest of Greg Daviscourt. These factual issues relate to the municipal liability claims in that the Deputies stated that they followed County policies when arresting Greg Daviscourt. It is impossible for the Court to determine, with the inherent factual issues, whether these policies were the moving force behind the Fourth Amendment violation. Thus, I find there are genuine issues of material fact that preclude summary judgment on the municipal liability claims against the Defendants. Accordingly, I find that summary judgment is not proper on Plaintiffs'

-15-

claims for municipal liability.

V.  CONCLUSION

Based on the foregoing, it is

ORDERED that the Arapahoe Defendants' Motion for Summary Judgment (docket #386), filed December 4, 2007, is **GRANTED** as to Plaintiffs' claims for conspiracy and unreasonable seizure and **DENIED** as to Plaintiffs' claims for unreasonable force and municipal liability.  It is

FURTHER ORDERED that the Arapahoe Defendants' Motion to Strike Inadmissible Evidence from Portions of Plaintiffs' Affidavits and Response Briefs (docket #443), filed February 21, 2008, is **DENIED.**  It is

FURTHER ORDERED that the Douglas County Defendants' Motion for Summary Judgment (docket #388), filed December 4, 2007, is **GRANTED** as to Plaintiffs' claims for conspiracy and unreasonable seizure and **DENIED** as to Plaintiffs' claims for unreasonable force and municipal liability.

Dated:  July 18, 2008

BY THE COURT:

s/ Wiley Y. Daniel  
Wiley Y. Daniel  
U. S. District Judge